[Civ. No. 2755.   Third Appellate District.—May 22, 1925.]

VINCENT CHERNEY et al., Plaintiffs and Respondents, v. W. D. JOHNSON, Defendant and Appellant; NATOMAS COMPANY OF CALIFORNIA, Defendant and Respondent.

[1] CONTRACTS—IMPROVIDENCE.—Parties cannot be relieved from their voluntary contracts on the mere ground that they are improvident.

[2] VENDOR AND VENDEE—DISCOVERY OF FRAUD—ACTION FOR DAMAGES —WITHHOLDING SUBSEQUENT PAYMENTS.—One induced by fraud to enter into a contract for the purchase of real estate may withhold payments after the discovery of the fraud and pending the action for damages.

[3] ID.—DEFAULT IN PAYMENTS—FORFEITURE.—Where time is not made of the essence of a contract for the purchase and sale of real property, and the contract contains no provision for a forfeiture of the purchasers' rights thereunder in case of their default, the purchasers do not forfeit their rights under the contract by their failure to pay an installment which becomes due after they have instituted an action for damages for fraud in the making of the contract.

[4] ID.—DEFAULT—RESCISSION—RETURN OF PURCHASE MONEY.—Under an executory contract for the sale of real property, where time is not made of the essence and there is no provision for forfeiture of

---

1.  See 4 R. C. L. 501.
2.  See 27 R. C. L. 380; 25 Cal. Jur. 560.

the purchasers' rights upon default, upon a default in payment by the purchasers the vendor may treat the contract as rescinded, if the vendor is not in default and is able and ready to perform; but, upon such a rescission, in the absence of anything in the contract to the contrary, the purchasers are entitled to a return of the purchase money theretofore paid by them, less any damages suffered by the vendor by reason of the breach.

[5] Id.—Fraud—Damages—Rescission—Alternative Judgment.—In an action by the purchasers for damages because of the fraud of the vendor in the sale of real property, under a contract wherein time is not made of the essence and there is no provision for a forfeiture of the purchasers' rights upon a default by them, where the defendant, in his answer, pleads a default by the purchasers subsequent to the commencement of the action and that he elected to terminate the contract, and he prays for a decree adjudging the contract terminated, and judgment is in favor of plaintiff, defendant is in no position to complain of the decree because it provides, in the alternative and at his option, for a termination of the contract and the repayment to the purchasers of the amounts paid by them, with interest.

(1) 13 C. J., p. 611, n. 92; 39 Cyc., p. 1266, n. 53, p. 1578, n. 14 New. (2) 39 Cyc., p. 1607, n. 57 New. (3) 39 Cyc., p. 1604, n. 32. (4) 39 Cyc., p. 1370, n. 53, p. 1381, n. 51 New. (5) 4 C. J., p. 694, n. 98; 39 Cyc., p. 2070, n. 13, p. 2072, n. 23 New.

APPEAL from a judgment of the Superior Court of Sacramento County. Ernest Weyand, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Theodore W. Chester for Appellant.

White, Miller, Needham & Harber for Plaintiffs and Respondents.

George, Hinsdale & Pigott for Defendant and Respondent.

FINCH, P. J.—Prior to the transactions herein set forth R. N. Hicks was in possession of the lands involved in this suit, under an executory contract of sale thereof to him by the Natomas Company, one of the defendants. The contract, dated December 27, 1917, provides for a payment

5. Right of vendee in contract for sale of realty to recover payments, note, L. R. A. 1918B, 540.

of $1,873.25 at the time of the execution thereof and annual installments of $499.54 on December 27th of every year thereafter to and including the year 1932, with interest at the rate of six per cent per annum, payable annually, the purchaser to have the right to pay any or all installments at any time. Overdue installments are to draw interest at the same rate as the principal. The purchaser is required to pay all taxes, assessments, and water charges on the land and, upon his failure to make such payments, the vendor is given the option to pay the same, the purchaser to reimburse the vendor, with interest at six per cent per annum thereon. Time is made of the essence of the contract and the vendor is given the option to declare the purchaser's rights under the contract forfeited upon his default in making any payment when due. Hicks paid all installments and interest which became due up to and including December 27, 1919. No subsequent payments have been made.

The Goodland Company was engaged in selling real estate and maintained offices in Sacramento, Chicago, and Manitowac, Wisconsin. Defendant Johnson is a lawyer, his office being in Chicago, and he was the fiscal agent of the company. The plaintiffs owned a farm in Wisconsin which they desired to sell with the view of locating in California. A. J. Torrison, a representative of the Goodland Company, who was in charge of its Manitowac office, approached plaintiffs relative to the purchase of lands by them in the Natomas district, near Sacramento. The plaintiffs theretofore had been endeavoring to sell their Wisconsin farm, both personally and through the Goodland Company. Under the circumstances stated, the plaintiffs came to California, Johnson and Torrison coming on the same train with them. They arrived in Sacramento February 11, 1920, and on the 13th Johnson and Torrison took them to see the lands in controversy, as well as other lands. The tract contains 57.51 acres. It is bounded on the south and the west sides by roads and on the east by an irrigation canal. A strip of land containing about 15 acres and lying west of the canal is separated from the main body of the land by a small drainage ditch. The land lying east of the drainage ditch is inferior in quality to the remainder of the tract and several feet higher in elevation. Practically all

of the land west of the ditch had a crop of peas growing upon it, but there appears to have been no cultivated crop upon that part lying east of the ditch. The plaintiffs were first taken to the southwest corner of the tract, where they examined the soil, and thence to the northwest corner, where another examination was made. Plaintiff Vincent Cherney testified that while on the tract Johnson "described it as 57½ acres. It was in peas. I told him it looked to be kind of a small patch for 57 acres. He says I must consider it is level land, it is very deceiving. . . . When he explained that to me, I did believe him. . . . He said the east boundary was as far as the peas were on." The witness further testified that he was not on the land "over half an hour. . . . When we first crossed on the southwest corner, Mr. Johnson says he was in a hurry, that I better come back." On their return to Sacramento, the plaintiffs signed an application, addressed to the Goodland Company, to purchase the land for $18,690.75 and, as an initial payment, they gave the company their promissory notes in the aggregate sum of $9,345.40. As a part of the same transaction, Johnson signed an instrument in the form of a letter, addressed to plaintiffs, as follows: "In case you are unable to sell your Manitowac County farm on or before April 1st, 1920, then it is agreed that if you notify us by that time, we will agree to resell the 57.51 acres, purchased by you this day, of Natomas land, or take the deal off your hands and cancel sale." On the following day the plaintiffs left Sacramento, without again inspecting the land, and returned to Wisconsin. On the next day after the foregoing instruments were executed, Johnson learned that the Goodland Company had no authority to sell the land and he then acquired an option in his own name to purchase the land from Hicks. The plaintiffs finally sold their farm in Wisconsin and on the twenty-sixth day of March, 1920, at Manitowac, the following agreement between them and Johnson was executed:

"Following is to supersede all former agreements between us in reference to your purchase of Lots 101 and 102, 57.51 acres of Natomas Elkhorn Subdivision, Sacramento County, California:

Purchase price of said lots, 6% interest..$18,690.75
You gave mortgage on account.......... 9,000.00
You gave note, due in 8 months, for.... 1,000.00
Balance to be paid in 8 or 9 annual pay-
    ments ........................... 8,690.75

"You to receive two-thirds of present pea-crop;

"You to pay for cultivating peas at $5 per day, not to exceed $150, however:

"You to pay cost of harvesting peas;

"Above described note for $1,000.00 to be paid on or before eight months; but your two-thirds of pea crop is to be applied in liquidation of said note."

On the following day Johnson received $9,000 in payment of the "mortgage on account" mentioned in the agreement and he thereafter assigned the note for $1,000 referred to therein to third persons, making a total of $10,000 received by him on the purchase price of the land. The plaintiffs again arrived in California June 6, 1920, and on the next day they discovered that 'the tract includes the 15 acres of land of inferior quality between the irrigation canal and the drainage ditch. They thereafter learned for the first time that the land is within the boundaries of a reclamation district and burdened with a bonded indebtedness of $4,000. They have never taken possession of the land or received any of the proceeds thereof.

The complaint was filed November 12, 1920. It is alleged therein, among other things, in addition to the said false representations, that Johnson informed plaintiffs that he would not pay any of the aforesaid bonded indebtedness and demanded that plaintiffs pay the same, and that he "has threatened to declare, and will attempt to declare, forfeited plaintiffs' rights and interest under said agreement of March 26th, 1920, in the event that plaintiffs shall not pay . . . said bonds, and . . . has refused and will refuse to credit plaintiffs on the purchase price of said real property, with any payments which they may make under the provisions of said bonds; . . . that defendant Johnson has refused to credit plaintiffs with more than $1,000 on account of the deficiency in quality of the land hereinbefore set forth." The prayer is for judgment that "plaintiffs are entitled to a rebate of $3,000 upon the purchase price provided in said agreement of March 26th, 1920, on account

of the deficiency in quality of said land, and are entitled to a further rebate therefrom in the amount now due upon said bonds; that said decree shall direct said defendant Johnson to assign said contract of December 27th, 1917, to plaintiffs, and shall adjudge and decree that defendant Johnson shall pay to plaintiffs such sum as this court may find to be due from him to plaintiffs and shall surrender and cancel said promissory note in the sum of $1,000 executed and delivered by plaintiffs to defendant Johnson on March 26, 1920, or that such other, further and different relief be granted as may be proper in the premises."

The answer of defendant Johnson was filed August 6, 1921. The answer denies the allegations of the complaint which are material to the determination of this appeal; and alleges that plaintiffs failed to pay the first installment of the purchase price of the land, and interest, which became due March 26, 1921; that on the twenty-eighth day of March, 1921, "this defendant served a written notice on plaintiffs demanding payment of the amounts above referred to" and stating "that unless said sums were paid in accordance with said contract that their interest in the contract and in the lands therein described would be terminated; that on or about the second day of August, 1921, this defendant served on plaintiffs a certain notice in writing dated July 25, 1921, terminating, canceling and ending all the right, title and interest in said lands and in said contract by reason of the default of plaintiffs." The prayer of the answer is "that plaintiffs take nothing in this action and that this court make its decree, ordering, adjudging and decreeing that all the right, title and interest of plaintiffs in and to said lands has been terminated and that said contract between this defendant and plaintiffs has been terminated and ended, and that this defendant have judgment for costs of suit and for such other and further relief as may be proper."

The defendant Natomas Company took the position of a mere stakeholder, its counsel stating "that the contract holder owes the Natomas Company a certain sum of money and is in default, but we do not care to take advantage of the default or terminate the contract."

The court found the facts hereinbefore stated, including those alleged in the complaint, to be true; that at the time

of the trial, which commenced January 31, 1922, "there was unpaid from defendant Johnson to said corporation (Natomas Company) on account of the principal of said purchase price, the sum of $6,494.02; that . . . there was due, owing and unpaid from defendant Johnson to said corporation, . . . on account of installments on principal, on account of interest thereon, and on account of taxes, reclamation assessments and water charges, the sum of $2,777.03; that all of said sums are secured by said contract, and must be paid in order to enable the defendant Johnson to acquire title from said corporation; . . . that at all times mentioned in said complaint, the real property therein described was and is now subject to a reclamation assessment duly and legally assessed against said property, in the sum of $4,000, no part of which has been paid." The court further found that Johnson misrepresented to plaintiffs the location of the east boundary line of the land as hereinbefore stated; that the value of the land is $1,575 less than it would be if it were all of the same quality as that pointed out to plaintiffs; "that at all times herein mentioned the defendant W. D. Johnson has been and is now in possession of said real property; . . . that prior to the commencement of this action, the defendant Johnson informed plaintiffs that he would not be bound by the terms of said contract of March 26th, 1920, and that he would not perform the covenants and conditions on his part to be performed as provided by the terms of said contract, nor has defendant Johnson at any time retracted his refusal to perform said contract"; and that Johnson demanded payment of plaintiffs and served notice upon them of termination of the contract as alleged in his answer.

As conclusions of law from the facts found, the court held "that there has been a breach of said contract of March 26, 1920, by the defendant Johnson; that plaintiffs are entitled to a decree of this court directing a specific performance by defendant of said contract; that plaintiffs are entitled to assume said reclamation assessments and should receive a deduction from the purchase price to be paid by them in the sum of four thousand dollars, on account of the lien of said reclamation assessment, and are entitled to a further deduction from said purchase price in the sum of fifteen hundred and seventy-five dollars on account of de-

ficiency in quality of said land''; that after making such deductions, there remains unpaid on the purchase price of the land the sum of $3,115.75, with interest thereon from March 26, 1920, payable in eight or nine installments, as provided in the contract, at the option of plaintiffs; and that plaintiffs are entitled to a decree terminating and rescinding said contract of March 26, 1920, in the event that defendant shall fail to perform said contract, and are entitled, in such event, to the repayment of all sums paid by them, with interest thereon at seven per cent per annum from date of payment.

Judgment was entered requiring specific performance of the contract by Johnson; directing the plaintiffs to pay to the clerk of the court, within thirty days after entry of the decree, such part of the said sum of $3,115.75 remaining unpaid on the purchase price as might then be due, together with interest, in accordance with the terms of the contract; the same to be paid by the clerk to Johnson upon delivery by the latter of a receipt showing payment of the amount due the Natomas Company under the terms of the Hicks contract, including payments made by that company in Johnson's behalf, as authorized by that contract; and directing Johnson to file with the clerk an undertaking in the sum of $4,000 indemnifying plaintiffs against ''any loss they may sustain by reason of the failure of the defendant John-son to comply with the terms'' of the Hicks contract. Omitting parts of the decree not material here, it continues as follows:

''It is further ordered, adjudged and decreed that if plaintiffs, within thirty days from the date hereof shall make the payments herein provided to be made by them, and if defendant shall fail to file said receipt within sixty days from date of notice of entry of this decree, said contract of March 26th, 1920, shall be and is hereby declared terminated and rescinded, and said clerk shall thereupon repay to plaintiffs the sums paid to him by plaintiffs under the terms hereof, and shall enter judgment in favor of plaintiffs and against defendant W. D. Johnson in the sum of ten thousand dollars, with interest thereon from March 27th, 1920, at the rate of seven per cent per annum to the date of entry of said judgment in the sum of ten thousand dollars. . . .

"It is further decreed that full jurisdiction of this case is retained to the end that further judgment and decree may be entered herein in accordance with the foregoing in the event that defendant Johnson shall fail to comply with the terms hereof."

The defendant Johnson has appealed from the judgment.

If that part of the decree which provides for the termination and rescission of the contract in the event of Johnson's failure to comply with the other provisions of the decree were omitted therefrom, it might be doubtful whether an affirmance would be possible. The decree is in harmony with natural justice but, unfortunately, natural justice and legal justice do not always coincide. Appellant concedes that he is under legal obligation to pay the assessment of $4,000, which is a lien on the land, as well as all sums due and to become due under the Hicks contract, before he will be in a position to give plaintiffs the title he agreed to convey to them, although he contends that he is not under obligation to them to make these payments until the time arrives at which they become entitled to a deed. Under appellant's theory of the case, plaintiffs must continue to pay the installments of the purchase price as they fall due and take their chances of his ability and willingness to clear the land when they become entitled to a deed. At the time the contract between the parties was executed, the amount of money necessary to clear the land under the Hicks contract, including the assessment of $4,000, greatly exceeded the unpaid installments under the contract between the parties, and this excess has been increased subsequently by payments made by the Natomas Company in Johnson's behalf and which remain a charge upon the land.

Johnson is a lawyer. He has "been in the land business about five or six years in California . . . and before that in Texas." From his position with the Goodland Company it may be inferred that he is a shrewd business man. He drafted the contract between the parties. The plaintiffs had never been in California prior to February 11, 1920, and were not familiar with California lands and did not know that the lands in question were within a reclamation district or subject to an assessment for the reclamation thereof. Their transactions with Johnson were improvident

in the highest degree. **[1]** Parties cannot be relieved from their voluntary contracts, however, on the mere ground that they are improvident.

Appellant contends that the evidence does not support the finding to the effect that Johnson misrepresented the location of the east boundary line of the land. The testimony of plaintiff Vincent Cherney, hereinbefore set out, is clearly sufficient to support such finding. It is urged that other findings are not supported by the evidence, but in view of the conclusion reached on another feature of the case it is unnecessary to discuss them.

It is contended that respondents were not in a position to maintain the action because, as asserted, they were in default in their payments under the contract. No payments, however, were due when the action was commenced. **[2]** Further, it has been held that "one induced by fraud to enter into a contract for the purchase of real estate may withhold payments after the discovery of the fraud and pending the action for damages." (*Palladine* v. *Imperial Valley Farm Lands,* 65 Cal. App. 727, 749 [225 Pac. 291, 300].) **[3]** Neither is there any merit in the contention that the plaintiffs have forfeited their rights under the contract by their failure to pay the installment which became due after the commencement of the action. Time is not made of the essence of the contract and it contains no provision for a forfeiture of plaintiffs' rights thereunder in case of their default. **[4]** In support of his contention that plaintiffs have forfeited their rights under the contract, appellant cites 39 Cyc. 1370, where it is stated that, although time is not made of the essence of a contract to sell land, "if the purchaser, without excuse, fails to pay at the stipulated time, the vendor, being in no default, and able and ready to perform all then required of him by the contract, may notify the purchaser to pay within a reasonable time, or he, the vendor, will treat the contract as rescinded." The rescission of a contract is very different from the forfeiture of a party's rights thereunder. In case of a rescission of an executory contract of sale of land on account of the purchaser's default, in the absence of anything in the contract to the contrary, the purchaser is entitled to the return of the purchase money theretofore paid by him, less any damages suffered by the vendor by reason of the breach.

[5] In this case the appellant notified the respondents that he had elected to terminate the contract and in his answer prayed the court for a decree adjudging the contract terminated. The court has entered an alternative decree to that effect. The appellant is in no position to complain that the court gave him the alternative of doing something else in lieu of the decree for which he prayed. He is at liberty to choose between the decree for which he prayed in his answer and the doing of the alternative things required of him. The appellant has at all times retained possession of the land. He alleged in his answer and testified at the trial that the land is worth the amount which the respondents agreed to pay therefor. Having suffered no detriment by the termination of the contract, the appellant is under obligation to return to respondents the full amount of the purchase money which he has received from them. It may be that the respondents have just cause of complaint against that part of the decree which, in effect, gives appellant the right to terminate the contract, but they have not appealed and are therefore bound by the decree. By accepting the decree they have, in effect, rescinded the contract, at the option of appellant, after the latter had repudiated it by his attempted termination thereof as alleged in his answer. Under such circumstances the respondents are entitled to a return of the purchase money paid by them, in the event that the appellant shall elect to abide by that part of the decree which terminates the contract. (27 R. C. L. 625; *Gaume* v. *Sheets,* 181 Cal. 119 [183 Pac. 535]; *Phelps* v. *Brown,* 95 Cal. 572 [30 Pac. 774]; *Drew* v. *Pedlar,* 87 Cal. 443 [22 Am. St. Rep. 257, 25 Pac. 749]; *Peloian* v. *Waldman,* 54 Cal. App. 116 [201 Pac. 344].) The other contentions made by appellant have no bearing upon the ground upon which this decision is based and need not be discussed.

The judgment is affirmed.

Plummer, J., and Anderson, J., *pro tem.,* concurred.

Appellant's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1925.

All the Justices present concurred.