[Civ. No. 22923. Second Dist., Div. One. Aug. 4, 1958.]

H. W. RICHARDS, Appellant, v. MARGARET S. OLIVER et al., Respondents.

Jesse M. Allen for Appellant.

Lewis, Singer, Burns & Cowitt, Emanuel Cowitt and Dreizman & Corfman for Respondents.

WHITE, P. J.—In the latter part of September, 1954, plaintiff, who had just recently returned from Arabia and taken up his residence at Van Nuys, in Los Angeles County, although he had no previous experience with or in the operation of a food or cocktail business, conceived the idea of acquiring and engaging in the operation of such an enterprise. To that end plaintiff contacted defendant Winfield D. Little, a business opportunity salesman working out of the office and under the license of A. J. Maragos, a business opportunity broker, regarding an advertisement which plaintiff had observed in a Los Angeles daily paper, concerning the offer for sale of a bar or cocktail lounge in the city of Long Beach, in Los Angeles County. However, the advertised business was not available because another deal in regard thereto was in progress. Accompanied by defendant Little, plaintiff looked at several other places, and finally became interested in "The Corsican Room," a cocktail lounge and restaurant in the city of Long Beach, upon which Mr. Maragos, the aforesaid broker, obtained a listing, and which establishment, according to plaintiff, defendant Little represented to him was a "fabulous place that was opening up. It was doing a terrific business and he (defendant Little) wanted me to see it. . . ." The Corsican Room was owned by defendants Margaret S. Oliver and Robert H. Oliver, her son. When the broker, Mr. Maragos, on October 12, 1954, obtained a listing on the Corsican Room he made it available to his salesman, defendant Little, to work upon and sell for the sum of $39,500 cash. It appears that the Corsican Room had been open for about a month prior to October 12, 1954, the date Mr. Maragos obtained the listing, and the latter testified that he told plaintiff that "approximately $14,000 was the gross business done from the day of opening to the date of listing." Plaintiff testified that defendant Little told him that he (Little) had been informed that "there was about $3,000 off the top" (i.e., not entered in the books of account). The making of such a statement was denied by both defendant Little and the broker, Mr. Maragos.

It appears that defendant Little advised plaintiff that the latter would need the assistance of someone experienced in the food business if he bought a type of business such as the Corsican Room. Defendant Little, according to plaintiff, led him to believe that the former possessed such experience, and plaintiff informed defendant Little that he would not buy the business unless he had such an experienced man with him as a cobuyer. After further conversation between plaintiff

and defendant Little, it was agreed that the latter would become a buyer with the former in the purchase of the Corsican Room and that defendant Little would invest some $6,000 as capital in the operation.

In the late afternoon of October 20, 1954, plaintiff Richards, broker Maragos and defendant Margaret Oliver signed a document entitled "Agreement of Purchase and Ratification." This agreement provided for the purchase of "The Corsican Room" for the sum of $42,500. It provided that the terms were to be "$15,000.00 in escrow on or before possession, the balance to be paid at rate of $1,000.00 or more monthly including 6% interest. Food and liquor stock to be inventoried above $42,500." The signatures appear on the document as follows:

" A. J. Maragos, Broker, License No. 628

By A. J. Maragos Broker or Salesman.

Winfield D. Little

"I agree to purchase the above described business and/or property on the terms and conditions herein stated.

PURCHASER H. W. Richards

"I agree to sell the above described business and/or property on the terms and conditions herein stated and agree to pay the above signed BROKER as a commission the sum of $2125 or $2750 TD Dollars, or one-half of the part payment in the event that PURCHASER shall fail, refuse or be unable to complete this purchase as set forth herein, provided that said one-half shall not exceed the full amount of BROKER's commission.

SELLER Margaret S Oliver

SELLER Robert H. Oliv ''

On October 22, 1954, escrow instructions were signed whereby defendant Vista Escrow Company, a corporation, was designated as escrow holder and stakeholder; Margaret and Robert Oliver as sellers, and plaintiff Richards and defendant Little as buyers.

By the terms of these escrow instructions the aforesaid "Agreement of Purchase and Ratification" of October 20, 1954 was modified. Under the escrow instructions, the purchase price was reduced to $40,375. Instead of the buyers purchasing the Corsican Room, however, the sellers agreed to

sell certain capital stock in Margo, Inc., a corporation not yet formed. Such corporation was to be formed by the sellers. All of the assets of the Corsican Room, including the lease, license, fixtures and inventory, would be transferred to this corporation, and all of the stock would be owned by Margaret and Robert Oliver. Margaret and Robert Oliver would then convey all of the stock in this corporation, which would own the property Richards originally agreed to buy. The escrow instructions further provided that the buyers would pledge the stock of Margo, Inc. back to the sellers until the total purchase price was paid; and, that the purchase was to be under a conditional sales contract and that the balance due after the down payment was made would be secured by a personal note from Richards and Little to the Olivers.

On October 22, 1954, Richards deposited $5,000 with the Vista Escrow Company and obtained a receipt. On October 25, 1954, Richards deposited $9,600 in escrow and obtained a receipt therefor. On this same date a trust deed and note in the face value of $2,755.32 executed by Joseph R. Parris and Myrtle Parris payable to H. W. Richards and Catherine B. Richards, on which a balance was then unpaid of the sum of $2,742.46, was deposited in escrow for which plaintiff received a receipt.

On October 26, 1954, an inventory of stock was taken and Richards and Little accepted the keys, took possession of the assets and the premises of the Corsican Room, and opened for business on the following day.

During the succeeding two weeks, according to the testimony of plaintiff Richards, he became aware that the Corsican Room was not doing anywhere near the business claimed for it, that defendant Little had been unable to raise the $6,000 or any capital which he had previously represented he would be able to raise, and that working capital was necessary for the survival of the business.

Plaintiff Richards then consulted with the broker Maragos to see if Maragos could find someone to buy Richards' interest in the business.

A listing agreement, dated November 8, 1954, was signed by Richards, Little, and Maragos.

Maragos then informed Richards that another salesman in his office, defendant Henry A. Bickler, who had been in the Corsican Room on several occasions after Richards and Little had commenced operations, and who had extensive experience as a bar operator, had expressed an interest in

the business and that Bickler had enough money to work out a deal on terms which would be satisfactory to Richards.

Negotiations ensued between defendant Bickler and plaintiff Richards. It was agreed that Bickler would buy Little's interest in the business on an "As Is" basis, and would raise any monies that were necessary in the business.

On or about November 15, 1954, defendant Bickler entered into the operation and management of the Corsican Room in place of Little.

An amendment to the previous escrow instructions dated November 18, 1954, was signed, whereby defendant Little withdrew from the escrow and defendant Bickler was substituted in his place "As Is," whereby Bickler assumed all of Little's liabilities and obligations arising out of the transaction.

Bickler paid Little $3,000 outside of escrow for Little's interest in the business.

During the next three weeks, according to plaintiff's testimony, he concluded that defendant Bickler was unable to manage and operate the business and also, that the latter had failed to contribute any working capital. On December 24, 1954, defendant Bickler and plaintiff, as sellers, and defendant Little, as salesman, signed a listing authorizing broker Maragos to sell the respective interests of plaintiff and defendant Bickler in the Corsican Room. Two days later plaintiff consulted for the first time with attorney Jesse M. Allen concerning the legal status of the former in the foregoing transactions.

On January 3, 1955, a notice of rescission was served on Patrick Phelan, as attorney for Margaret Oliver, and also upon her personally and the broker Maragos and defendant Bickler. On the following day a similar notice of rescission was served upon defendants Little, Robert Oliver and Vista Escrow Company. The notice of rescission reads in part:

"You and each of you please take notice that H. W. RICHARDS does hereby rescind that certain agreement contained in escrow instructions under Escrow number 1597-LB of the VISTA ESCROW COMPANY, at 6029 Atlantic Avenue, Long Beach, California, to which reference is made for further particulars.

"That said agreement is rescinded on the ground that MARGARET S. OLIVER by herself and through her agents made material representations to said H. W. RICHARDS, which were

in fact untrue, and upon which representations said H. W. RICHARDS did rely to his detriment.''

By such document plaintiff offered to restore to defendants Margaret S. and Robert H. Oliver ''all benefits received by him pursuant to said agreement,'' and then demanded, ''that the sum of $14,600.00 in cash, together with that certain second trust deed now on deposit in escrow with the *Vista Escrow Company,* as aforesaid, be forthwith returned to said H. W. RICHARDS; and further demands that all necessary instruments to release said properties be executed to escrow; and further, H. W. RICHARDS shall relinquish and abandon possession of the Corsican Room to said MARGARET S. OLIVER and ROBERT H. OLIVER in three days from the date of service of the within instrument; and further, said H. W. RICHARDS does repudiate the said agreement.''

On January 7, 1955, plaintiff returned the keys to defendant Margaret S. Oliver, and three days later returned monies to the Corsican Room commercial account, which had been deposited on a room as rent for the office, and wrote a letter directed to the officers of the bank, authorizing them to substitute in his place and insert on the Corsican Room bank account the name of defendant Margaret S. Oliver. Richards delivered that letter to Margaret Oliver who later signed it and presented it to the Belmont Shore Bank. Defendant Margaret S. Oliver and defendant Bickler wrote a check for the balance of the funds on deposit in that bank.

Defendant Bickler continued to stay in the place of business and operate there on a cash basis until January 24, 1955, at which time a fire partially destroyed the premises and Bickler vacated the Corsican Room on the advice of his attorney.

Defendant Mrs. Oliver collected the insurance, made changes, reopened the Corsican Room and operated it.

After plaintiff Richards had served his notice of rescission on the Olivers, and returned the keys to the Corsican Room to defendant Margaret S. Oliver, the Olivers sold their stock in Margo, Inc., without notice to Richards, or accounting to him for the proceeds, and did not at any time reveal the sale price of the stock.

The cause proceeded to trial upon plaintiff's amended complaint and three answers thereto by four of the defendants only, namely, Margaret S. Oliver and Robert H. Oliver, Vista Escrow Company, and Henry A. Bickler; and upon a cross-

complaint in interpleader brought by defendant Vista Escrow Company against the plaintiff and all other defendants herein, and an answer to said cross-complaint in interpleader by two defendants only, namely, Margaret S. Oliver and Robert H. Oliver; and upon a cross-complaint brought by said defendant Henry A. Bickler against plaintiff herein, and the plaintiff's answer to said cross-complaint; and upon a cross-complaint brought by said defendants Margaret S. Oliver and Robert H. Oliver against the plaintiff and all other defendants herein, and the answer to said cross-complaint by the plaintiff only, namely, H. W. Richards.

The plaintiff's amended complaint sets out seven separate causes of action, the first three causes being common counts and four causes being for rescission, cancellation, and the return of money and personal property.

Counts one, two and three are common counts in law and allege, in brevity, money and personal property had and received, a demand for return and a refusal.

The fourth cause of action alleges that a rescission has been effected due to fraud.

The fifth cause of action alleges that if the court finds a rescission has not been effected in fact, that it do so now on plaintiff's renewed offer to restore anything of value he received to the defendants, provided that they return to him all they have received from him.

The sixth cause of action alleges a rescission effected due to mistake of fact.

The seventh cause of action is a renewal in court on the stated facts of the offer to rescind, based on mistake of facts, and praying for a decree cancelling and rescinding the contract of sale alleged in the complaint.

The answer of the defendant Vista Escrow Company to the amended complaint filed herein contains general denials, excepting the defendant Vista Escrow Company admits and alleges: its corporate entity and that all transactions occurred in Los Angeles County, California; admits it received the sums of money as specified in the escrow agreement, has paid them out as required by said escrow agreement, and has remaining on hand, after paying a reasonable attorney's fee of $1,000 and escrow costs and charges, the sum of $1,342.36; admits the provisions of the escrow instructions as alleged by plaintiff, and the payments out of escrow as alleged by plaintiff; and, admits the receipt of a written notice of rescission and demand by plaintiff. As a separate and dis-

tinct defense the defendant Vista Escrow Company alleges that it acted as a stakeholder only, and acted only as authorized by both buyer and seller, and that after the payment of a reasonable attorney's fee of $1,000, escrow costs and charges, it now has the sum of $1,342.36 on hand which it tenders in court.

The answer of the defendants Margaret S. Oliver and Robert H. Oliver to the amended complaint filed herein contains general denials, except the defendants Margaret S. Oliver and Robert H. Oliver admit and allege: that all transactions mentioned occurred in Los Angeles County, California; admit that A. J. Maragos was at all times mentioned, their agent; admit they have not paid plaintiff the sum alleged; allege that all plaintiff's causes of action do not state facts sufficient to constitute causes of action against them; admit that the Corsican Room did not collect the sum of $3,000 per month, or any other sum which was not reflected in the books of account; admit that they refuse to pay to plaintiff the sum of $14,600, or to return the note and trust deed; allege that the plaintiff has no legal capacity to sue, that there is a defect of parties plaintiff, a nonjoinder of parties plaintiff, a misjoinder of parties defendant, and a nonjoinder of parties defendant.

The answer of the defendant Henry A. Bickler to the amended complaint filed herein contains a general denial of the entire amended complaint, except that the defendant Henry A. Bickler admits and alleges: that plaintiff served a notice of rescission on the named defendants on or about January 3, 1955; admits plaintiff was not familiar with the business and operation of a restaurant and cocktail bar, that plaintiff entered into the contract alleged, to purchase the Corsican Room, and that plaintiff entered into possession of the Corsican Room on October 26, 1954.

The cross-complaint in interpleader by Vista Escrow Company contains one count.

It alleges the corporate entity of the cross-complainant; that on October 22, 1954, cross-defendants Margaret S. Oliver and Robert H. Oliver, as sellers, and cross-defendants Winfield D. Little and H. W. Richards as buyers, entered into an alleged written escrow agreement in which the cross-complainant Vista Escrow Company was designated as escrow holder and stakeholder; that by the terms of said agreement the buyers agreed to purchase the capital stock of Margo, Inc., a corporation, doing business as the Corsican Room, for the sum of $40,375; that thereafter disputes arose between

buyer and seller and that both made conflicting demands upon the escrow holder and stakeholder; that the escrow holder has complied with the terms of the said agreement; that it has a balance of $2,342.36 less costs and attorney's fees of $1,000; that under the terms of said agreement in such event the escrow holder is empowered to withhold all further proceedings of the performance of said escrow; that by reason of said disputes and delay, cross-complainant has incurred costs and legal expenses in the reasonable sum of $1,000.

The answer of the cross-defendants Margaret S. Oliver and Robert H. Oliver to the cross-complaint in interpleader contains a general denial of the entire cross-complaint, plus a further denial that $1,000 is a reasonable fee for costs and attorney's fees; plus an allegation that said cross-complaint does not state facts sufficient to constitute a cause of action; excepting that cross-defendants Margaret S. Oliver and Robert H. Oliver admit that said cross-complainant has in its possession the sum of $2,342.36.

The cross-complaint of Margaret S. Oliver and Robert H. Oliver contains one count for breach of contract.

It alleges a written agreement between cross-complainants as sellers and cross-defendants H. W. Richards, Winfield D. Little and Henry A. Bickler as buyers, wherein the cross-defendant Vista Escrow Company was designated as escrow holder; that under the terms of said written escrow agreement the buyers agreed to purchase from the sellers all the capital stock of Margo, Inc., a California corporation, doing business as the Corsican Room; that possession and assets of the Corsican Room were delivered to the cross-defendants who operated same until January 24, 1955; that cross-defendants agreed to be responsible for matters undertaken while in possession; that cross-defendants wilfully failed, refused and neglected to perform the terms of the said written agreement, complete said transaction, or continue said business; that cross-defendants left unpaid debts and obligations of $20,000 which cross-complainants were compelled to pay to their damage.

The answer of the cross-defendant H. W. Richards to the cross-complaint of Margaret S. Oliver and Robert H. Oliver contains an admission that cross-complainants delivered to cross-defendants possession of the said Corsican Room and all assets thereof; that cross-defendants operated said business, but that the cross-defendant H. W. Richards did not operate the said business on and after January 5, 1955. But other

than these admissions the answer of the cross-defendant H. W. Richards to the cross-complaint of Margaret S. Oliver and Robert H. Oliver contains a general denial of the entire cross-complaint.

The cross-complaint of Henry A. Bickler charges fraud and deceit against H. W. Richards.

It alleges that plaintiff entered into a written contract with the defendants Margaret S. Oliver and Robert H. Oliver for the purchase of the Corsican Room on October 20, 1954; that the escrow instructions were executed on or about October 22, 1954; that plaintiff H. W. Richards and defendant, Winfield D. Little, entered into possession of the Corsican Room and commenced operations on or about October 26, 1954; that between November 7, 1954, and November 18, 1954, the plaintiff wilfully made false representations to defendant Henry A. Bickler, to wit: that if Henry A. Bickler would join H. W. Richards as a buyer of the Corsican Room and purchase the interest of Winfield D. Little, that H. W. Richards would complete the purchase of said business in accordance with the terms of the escrow and operate the business with Henry A. Bickler for a reasonable period of time; that the plaintiff H. W. Richards at the time of making said statements had no intention of completing the escrow agreement or contract for purchase but at such time was secretly consulting with attorneys and attempting to find ways to avoid said purchase contract and escrow agreement; that defendant Henry A. Bickler believed and relied upon said representations; that he was thereby induced to and did purchase the said interest of Winfield D. Little for the sum of $3,000 and pay a broker's commission of $500; that the defendant Henry A. Bickler entered into an agreement with plaintiff H. W. Richards on November 26, 1954, which agreement provided for the general operation of the business of the Corsican Room and an equal division of interest; that Henry A. Bickler took over management and operation of the Corsican Room; that plaintiff served a notice of rescission on the defendants on January 3, 1955; that because of the cost of purchase from Winfield D. Little, broker's commission, loss of earnings, and attorney's fees, the defendant Henry A. Bickler has sustained actual damages totaling $4,425.

The answer of the cross-defendant H. W. Richards to the cross-complaint of Henry A. Bickler, contains a general denial of the entire cross-complaint, excepting that the plaintiff H. W.

Richards admits the written contract between himself and defendants Margaret S. Oliver and Robert H. Oliver; admits the execution of the escrow instructions; admits the receipt of possession of the Corsican Room and the commencement of operations on October 26, 1954; admits that defendant Bickler became a party to the said escrow instructions as per plaintiff's allegations in his first amended complaint and as admitted by defendant Bickler in his cross-complaint; admits that the defendant Bickler entered into an agreement with plaintiff Richards on November 26, 1954, which agreement provided for the general operation of the business of the Corsican Room and for a division of interests; and admits the service of the notice of rescission on January 3, 1955, on each of the defendants.

The trial court found that:

(A) The defendant Little and the plaintiff, and defendant Bickler and the plaintiff, were partners;

(B) That the subject matter of the contract was for the purchase and sale of the Corsican Room;

(C) That the contract for the purchase and sale of the Corsican Room was not rescinded;

(D) That the plaintiff did not return, restore or offer to do so anything of value received by him under any contract;

(E) That plaintiff and Little, or plaintiff and Bickler, were not agents of the defendants Oliver in the operation of the Corsican Room;

(F) That the defendants Oliver resumed dominion and control of the Corsican Room for the purpose of mitigating damages;

(G) That broker Maragos was not the agent at all times of the defendants Oliver;

(H) That the plaintiff committed a wrongful abandonment; and

(I) That plaintiff never served on defendants a notice of his election to rescind the contract.

Judgment was rendered as follows:

(a) That the plaintiff take nothing by reason of the amended complaint.

(b) That judgment is ordered for the defendants.

(c) That defendant Henry A. Bickler have judgment against the plaintiff herein for his costs in the sum of $10.50.

(d) That the cross-complainant Henry A. Bickler have judgment against the plaintiff herein in the sum of $3,675.

(e) That the cross-complainant Vista Escrow Company have

judgment on its cross-complaint; that after payment of said cross-complainant's escrow charges, court costs, and $500 attorney's fees, the balance then to be paid into court and distributed pro-rata among cross-complainants Bickler, Margaret Oliver, and Robert Oliver for whom a money judgment is given.

(f) That cross-complainants Margaret S. Oliver and Robert H. Oliver have judgment against plaintiff herein for all monies heretofore paid to them by reason of said transaction.

Plaintiff prosecutes this appeal from the judgment.

 As his first ground of appeal it is contended by appellant that the court erred in failing to conclude as a matter of law that the contract for the purchase of the Corsican Room was void *ab initio*. In this regard, appellant urges that the contract is uncertain as to subject matter and terms. That the agreement, if it was understood by the parties at all, was not a contract for the purchase and sale of the lease, furniture, fixtures, equipment, or merchandise of the Corsican Room, but was an agreement for the purchase and sale of the Olivers' stock in a corporation not yet formed, and which was to be the owner of said enumerated items above, by a transfer from the Olivers to that corporation when formed. It is true, as urged by appellant, that the courts will not uphold agreements which contain indefinite and uncertain provisions regarding the obligations imposed upon the parties thereto, and which contracts are devoid of mutuality and consideration (*Hamlin* v. *Barnhart,* 26 Cal.App. 632, 634 [147 P. 1188]). Contracts must be definite enough to enable the court to ascertain what is required of the respective parties in the performance thereof (*Moore* v. *White,* 98 Cal.App.2d 510, 513 [220 P.2d 918]; *Goehring* v. *Stockton Morris Plan Co.,* 93 Cal.App.2d 417, 420 [209 P.2d 41]). As was said in *Ellis* v. *Klaff,* 96 Cal.App.2d 471, 478 [216 P.2d 15]:

". . . Although the terms of a contract need not be stated in the minutest detail, it is requisite to enforcibility that it must evidence a meeting of minds on the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages."

 However, we cannot perceive wherein the contract here in question may be strictured with the imperfections charged by appellant and referred to in the foregoing cases. Read in its entirety the contract herein simply provided that the sellers (respondents Mr. and Mrs. Oliver), would, at their

own expense, cause a corporation to be formed, and that the buyers (appellant and defendant Little) would purchase the shares of stock of the corporation that respondents Mr. and Mrs. Oliver would cause to be issued, and which shares would be duly transferred to the buyers upon the close of escrow, and that said buyers in turn would pledge said shares to the sellers as security for payment of the balance due on the purchase price of the Corsican Room. The escrow instructions, which formed the contract of the parties, clearly provided that the escrow would close upon completion of the transfer of the liquor license by the sellers to the corporation. It is also clearly set forth in the contract that an inventory of the merchandise was to be taken by the parties immediately prior to delivery of possession to the buyers, and the cost price thereof was to be paid by the buyers to the sellers, in addition to the agreed consideration to be paid for the sale of the business. Appellant not only read the escrow instructions which formed the basis of the contract, but suggested several changes therein and which suggestions were adopted and inserted in retyped copies of the escrow instructions.

Appellant next assails the validity of the contract for the asserted reasons that it is in violation of the Corporate Securities Act (Corp. Code, § 25500) and the Alcoholic Beverage Control Act (Bus. & Prof. Code, § 23300). Neither in his notice of rescission, pleadings, or at the trial did appellant raise either of these issues. As is stated in 12 California Jurisprudence 2d, page 306, section 106, ''Necessity for Pleading Illegality.—It is presumed that private transactions have been fair and regular and that the law has been obeyed. Therefore, if a contract is valid on its face, and if facts exist which tend to prove its invalidity and to overcome the presumption, the burden rests on the party claiming illegality to prove such facts.'' However, conceding that appellant's contentions in this regard may be raised for the first time on appeal, we are constrained to say that an examination of the contract here in question impresses us that both claims lack substance here. While section 25500 of the Corporations Code provides that, ''*No company* shall sell . . .'' (emphasis added) the corporate shares mentioned in the instant contract were shares of the corporation issued personally to respondents Mr. and Mrs. Oliver, pursuant to a permit issued by the Commissioner of Corporations and thereby became the personal property of said respondents. The Corporate Securities Act does not apply to the sale of securities when made

by or on behalf of a vendor not the issuer (Corp. Code, § 25152).

As to the argument that the contract was in violation of the Alcoholic Beverage Control Act, the record reveals that the transfer of the liquor license to the corporation was duly completed by respondents Mr. and Mrs. Oliver in accordance with the escrow instructions and contract. The corporation was thereby licensed to operate the business insofar as the sale of liquor is concerned. The instructions provided that the escrow should close when such transfer of the liquor license was completed, and this was done. There is no evidence in the record that such transfer was not accomplished in conformity with the law and rules governing such a transaction. As to operation of the business by appellant it seems fair to say that such operation was under the existing liquor license held by the sellers, and as an agent of the sellers until the transfer of the liquor license was completed. Under the facts and circumstances surrounding the transactions between the parties herein, we are not at liberty to assume that there was a violation of the law.

Appellant next contends that neither defendant Little nor respondent Bickler were his partners. This contention is devoid of merit. A cursory examination of the escrow instructions hereinbefore referred to, and which constituted the basis for the contract of the parties, indicates at once that the documents contained all the indicia of a partnership. Clearly, appellant, defendant Little, and later, respondent Bickler associated themselves together to carry on, as coowners, a business for profit. When two or more persons contract to unite their property, labor and skill, in the prosecution of some joint and lawful business, and to share the profits, a general partnership is thereby established (37 Cal.Jur.2d, p. 519, § 2).

A review of the pleadings and the reporter's transcript unmistakably show that the basis for this action was, as set forth in the amended complaint, wherein it was alleged:

## "VIII.

"THAT in order to induce plaintiff to enter into the contract herein alleged, defendant MARGARET S. OLIVER and her agents did state and represent to the plaintiff that the said Corsican Room was a good and profitable business and it was then collecting and had been collecting a gross amount on account of sales made to customers a sum in the excess of

$14,400.00 per month of operation; that in addition to the $14,400.00 gross sales that the Corsican Room was grossing approximately $3,000.00 per month in sales which were not reflected in the books of account of said business; that the profits from the total sales of said business were in excess of $2,000.00 per month; and defendant MARGARET S. OLIVER did further represent to plaintiff that such sales and profits in like amounts would continue; that defendants suppressed facts concerning the gross income from sales of food and liquor during the month of October prior to the execution of the agreement herein alleged; and defendant's MARGARET S. OLIVER and ROBERT H. OLIVER did represent that the Corsican Room was capable of and would gross even greater sales and profits in the succeeding months; and defendant ROBERT H. OLIVER did further represent to plaintiff that the months of November and December were the best two months of the year for sales and profits in restaurant and cocktail bar business in the City of Long Beach, California; and said MARGARET S. OLIVER did further represent to the plaintiff herein that her reason for selling the Corsican Room to him was that her health would not permit her to operate the Corsican Room as well as another similar business in the City of Long Beach, known as OLIVER's ROSE ROOM.

"IX.

"THAT plaintiff was not familiar with the business and the operation of a restaurant and cocktail bar, and did rely entirely upon the said representations of defendant MARGARET S. OLIVER and her agents, and upon her judgment, knowledge and conclusions, and being induced thereby, did enter into the contract herein alleged to purchase the Corsican Room aforesaid, and did enter into possession of the Corsican Room on or about the 26th day of October, 1954.

"X

"THAT during the following months of November and December of 1954, and subsequent to the making of the contract herein alleged and subsequent to the payment and deposit of the money and documents with the VISTA ESCROW COMPANY as aforesaid, plaintiff discovered that the defendant had made an error in her calculations as to the amount of sales per month that would be made by the business of operation of the Corsican Room aforesaid; that such error was gross in that the monthly gross sales for the month of November were only in the amount of $5825.77; and that the gross sales for the month of December were only in the amount of $5582.61; and that it

appeared that the calculations of the defendant MARGARET S. OLIVER were not based on the sales during the month of October while she, MARGARET S. OLIVER, was operating the said Corsican Room, but were based on figures compiled the first four weeks of operation of the said Corsican Room during the month of September, 1954."

The entire trial was conducted on the theory of alleged fraudulent or mistaken representations made to appellant by respondents Mr. Oliver and his mother, Mrs. Oliver, that the Corsican Room was doing a business in excess of $14,000 per month prior to the sale and that to the income as shown by the books should be added the sum of $3,000 per month, "taken off the top" (register slips destroyed and therefore, would not show in the records). The evidence as to these and other claimed fraudulent representations was very much in conflict. Appellant's charges of misrepresentation were denied. After hearing all of the testimony, the trial judge observed, when directing that briefs be filed, "Now, there has been some proof offered of alleged misrepresentation by some of the parties. I am not particularly impressed with some of these alleged misrepresentations. I am inclined to think, and I am still open-minded about it, I am open to conviction contrary to what I am stating now, I think the plaintiff's case must stand or fall on one thing, and that is whether or not Mrs. Oliver, Marigos, or Little told him that they were taking money off of the top. That has been denied.

"There is a conflict of testimony. Mr. Marigos, Beaman, Mrs. Oliver have all denied that they made any such statements, and I am inclined to think that perhaps those statements were not made in just the way the plaintiff testified. He went into this deal, I would assume open-mindedly, and rather than being less careful than the average individual, I think Mr. Richards (appellant) is the type of person who is more careful.

"The books were thrown open to him. He took his time to examine them, was down at the place several times, and looked the place over. . . ."

We have heretofore given a synoptical statement of the testimony upon which appellant chiefly relied for the establishment of his case based on fraudulent or mistaken representations, and upon which the court in the main manifestly based its verdict. In the instant case the gravamen of appellant's cause of action was that he entered into the contract here in question because of fraudulent or mistaken representa-

tions. This primarily presented a factual situation for determination by the duly authorized trier of the facts. If no fraud was perpetrated upon appellant, as was found by the trial court, then under his pleadings and the theory upon which he tried the case, he was not entitled to rescind the contract which he made. The fact that appellant had no previous knowledge as to the operation of a cocktail lounge and restaurant, and after entering upon such a venture, realized he had made a mistake in purchasing and attempting to operate such a business, about which he knew nothing, does not constitute grounds for rescission. In the absence of fraud, misrepresentations or mistake, parties cannot be relieved from their voluntary contracts on the ground alone that they constituted a mistake in business judgment or are improvident (*Cherney* v. *Johnson,* 72 Cal.App. 725, 734 [238 P. 150]).

It is manifest that appellant's case must stand or fall upon the verity of the testimony addressed to the trial court. Since the trial judge accepted the testimony of respondents Mr. and Mrs. Oliver and their witnesses as to alleged false or mistaken representations, we are powerless to disturb the conclusion arrived at in the court below. As has so often been repeated, reviewing judges are, obviously in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. The triers of fact are the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847), and are the judges of the effect and value of evidence addressed to them, except in those instances where it is declared by the law that it shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061). As a necessary corollary of the rules just noted, the trial judge in the instant case was authorized, if he conscientiously felt warranted in so doing, after a full and fair consideration thereof, to reject any testimony which might have been contradictory to that of respondents and their witnesses, and therefore, to disbelieve the testimony of appellant, and accept that of respondents as to the facts and circumstances surrounding the negotiations for and the execution of the contract here in question.

Appellant earnestly attacks other findings of the court as being unsupported by the evidence. He also urges inconsistency of the findings. We agree that some of the findings are contrary to the evidence, and some others are inconsistent, but we are confronted with the pertinent material and controlling finding that appellant was not induced to

enter into the contract through false or mistaken representations, which is supported by substantial evidence, and since we have construed the contract as binding upon appellant in the absence of fraudulent, false or mistaken representations, the fact that findings on other, and therefore, irrelevant matters are not supported becomes immaterial in this case. As was stated in *Culjak* v. *Better Built Homes, Inc.*, 58 Cal.App.2d 720, 725 [137 P.2d 492]:

"But aside from the foregoing, if we concede the inconsistency of the findings, it cannot truly be said that the entire record discloses a miscarriage of justice. In such event the judgment can not be disturbed (Const. art. VI, § 4½). In order to justify the reversal of a judgment because of defective findings it must affirmatively appear not only that substantial injury has been caused and that substantial rights have been affected but also that a different result would have been probable if the defect had not occurred. (*Lutz* v. *Merchants' National Bank*, 179 Cal. 401 [177 P. 158]; *Murnane* v. *LeMesnager*, 207 Cal. 485, 495 [279 P. 800].) On this point the code as well as the Constitution is mandatory. (Code Civ. Proc., § 475, Cal. Const., art. VI, § 4½, *supra.*) Wherever possible a litigated controversy should be 'finally disposed of by a single appeal.' (Code Civ. Proc., § 956a; *Tupman* v. *Haberkern*, 208 Cal. 256 [280 P. 970].)"

 Finally, appellant insists that the court erred in overruling his objections to the introduction into evidence of a copy of an agreement entered into between him and respondent Bickler. When the copy of the original document was offered in evidence, the following occurred:

"Mr. Allen (attorney for appellant): Objected to as not the best evidence. This copy was not signed and we have not found the original, nor is sufficient foundation laid for the use of a copy and this copy is not the final agreement between the parties that was signed.

"The Court: How do we know that?

"Mr. Allen: Mr. Bickler has not testified this was the final agreement. He said that was a copy of the original paper.

"The Court: He has not said it was not the final agreement. I am satisfied with the foundation. He said he was furnished with a signed copy. He can't find it, has lost it and says this is a copy of the one which was signed and of which he had possession.

"MR. ALLEN: I will withdraw it then.

"THE COURT: For the record, let your objection remain and let me overrule it.

"MR. ALLEN: All right.

"THE COURT: The objection is overruled. Received in evidence as defendant Bickler's exhibit A. Agreement dated November 2, 1954."

Not only did appellant's counsel withdraw his objection, but the ruling of the court was correct because the record reflects sufficient proof of the loss of the original to warrant introduction into evidence of the copy (Code Civ. Proc., § 1855, subd. 1).

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied August 28, 1958.